UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CYNTHIA HAYMON ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> NORTHEAST ILLINOIS REGIONAL ) <br> COMMUTER RAILROAD CORPORATION, ) <br> d/b/a METRA, *et al*. ) <br> ) <br> Defendant. ) | No. 1:18-CV-00848 <br><br> Judge Edmond E. Chang |

**MEMORANDUM OPINION AND ORDER**

Cynthia Haymon brought this disability-discrimination action against her former employer, the Northeast Illinois Regional Commuter Railroad Corporation, which operates under the much more well-known name of Metra. R. 40, Amended Compl. at 4.[1] At the relevant times, Haymon was a Clerk and a member of the Transportation Communications International Union. R. 172, DSOF ¶¶ 4–5; R. 172-1, Haymon Dep. 42:14–46:07, 65:20–24, 46:12–19, 47:09–16. Haymon alleges that Metra discriminated against her on the basis of her diabetes diagnosis. Amended Compl. at 5–6.

After a partial grant of a dismissal motion, Haymon's only remaining claims were for (1) alleged discrimination based on a three-day suspension in December 2015; and (2) alleged retaliation when Metra disqualified Haymon from the General

---

[1]The Court has subject matter jurisdiction over this case under 28 U.S.C. § 1331. Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

Clerk position in the Engineering Department. R. 74, Opinion on Mot. to Dismiss at 20–21, 30–32. After the close of discovery, Metra now moves for summary judgment on those remaining claims. R. 169, Def.'s Mot. Summ. J. at 1. For the reasons explained in this Opinion, Metra's motion is granted because there is no issue of material fact over the legitimate reasons for Haymon's suspension nor any evidence that she was retaliated against for her protected activity. Haymon also brings her own motion for partial summary judgment, but because the statement of facts in support of it does not comply with Local Rule 56.1, and because it is not clear on what issue Haymon is seeking summary judgment, her motion is denied. R. 187, Pl.'s Resp. at 1.

## I. Background

In deciding Metra's motion for summary judgment, the Court views the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Having said that, when Haymon fails to comply with Local Rule 56.1 in presenting purportedly disputed facts, the Court may deem Metra's statement of facts to be admitted and set aside Haymon's unsupported counter-assertions.[2] *See Delapaz v. Richardson*, 634 F.3d 895, 899-900 (7th Cir. 2011) (describing the importance of Local Rule 56.1 and the trial court's enforcement of it).

---

[2]The Court repeatedly reminded Haymon that she could receive assistance with her filings through the Pro Se Help Desk, and the Court also extended (multiple times) the response deadline at Haymon's request. R. 33, 47, 48, 81, 177, 180, 186. Although Haymon is a *pro se* plaintiff, the Court has the discretion to enforce Local Rule 56.1 and does so in this case. *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006).

Haymon began working as a Clerk for Metra on May 13, 2013. DSOF ¶ 4; Haymon Dep. 42:14–46:07, 65:20–24. Haymon's complaint alleges that Metra failed to accommodate her Type 2 diabetes in "forcing her back to work from approved medical leave or absence …." R. 187, Pl.'s Resp. at 1.[3]

### A. General Engineering Clerk Position

On July 15, 2016, Haymon "bumped" into the General Engineering Clerk position. DSOF ¶ 43; R. 172-4, Metra Employee Personal Record. Haymon had a 30-day training period for this position, but throughout her training, "consistently made mistakes[.]" DSOF ¶¶ 45–46; Haymon Dep. 108:20–109:01; R, 172-36, Perez Dep. 134:18–137:10. For example, on one occasion Haymon "was asked to look up an invoice in Excel and was unable to do so." DSOF ¶ 47; Perez, Dep. 135:13–135:25.

According to Haymon, on August 22, 2016, before the 30-day training period was finished, she did not need to continue the training and she was ready to work as the General Engineering Clerk. DSOF ¶ 49; Haymon Dep. 180:19–181:15.[4] Haymon's supervisor, John Meyer, "consulted with Metra's Labor Relations Department and, consistent with their advice, created a test to ensure that Plaintiff could perform the

---

[3]Because Haymon did not comply with Local Rule 56.1, none of her assertions in her brief concerning her Type 2 diabetes can be construed in her favor or considered. What's more, the defense, which did comply with Local Rule 56.1, does not provide further facts or details on Haymon's Type 2 diabetes condition, so there is nothing more on this point that the Court can consider in the light most favorable to Haymon.

[4]Haymon's co-employee, Tracy Carpenter, was assigned to train Haymon, and Carpenter was off duty from August 15 until August 19, 2016. DSOF ¶¶ 45, 48; Haymon Dep. 172:17–173:07; Perez Dep. 137:11–138:03, Meyer Dep. 37:18–38:04. Because Haymon worked alone during that time, her training was extended for the same amount of time that Carpenter was off work. DSOF ¶ 48.

job prior to the end of her 30-day training period." DSOF ¶ 49; R. 172–37, Meyer Dep. 14:02–05, 51:08–19. Haymon needed to obtain a score of at least 50% to pass the test, but she answered only 16 out of 40 questions correctly, so she failed. DSOF ¶ 51; R. 172-15, Formal Investigation Transcript 38:17–40:06. On August 24, 2016, Meyer was deemed to be disqualified from the position because she failed this test. DSOF ¶ 52; Meyer Dep. 50:14–51:05; Perez Dep. 15:12–22; R. 172-2, Haymon Dep. 169:16–170:05. In response, one week later on August 31, Haymon requested an unjust-treatment hearing. DSOF ¶ 53; Haymon Dep. 197:09–22. Following the hearing, on October 25, 2016, Metra determined that the evidence presented at the hearing supported the finding that Haymon's disqualification "was based on a fair evaluation of her skills and performance." DSOF ¶ 55; R. 172-17, Unjust Treatment Hearing Decision. Haymon's union appealed the decision, but on December 28, 2016, Metra's Labor Relations Department rejected the appeal. DSOF ¶ 57; Haymon Dep. 201:23–202:02; R. 172-19, Denial of Appeal at 6.

### B. FMLA Leave

Metra has a leave policy that effectuates the Family and Medical Leave Act (FMLA), which allows employees to take up to 12 weeks of unpaid leave if they "are unable to perform their job duties due to a serious health condition." 29 U.S.C. § 2601; DSOF ¶ 14; R. 172-25, FMLA Policy. In 2014, Metra granted Haymon's request for around 12 weeks off of work. DSOF ¶ 17; R. 172-30, Employee Attendance History; R. 172-31, Abbreviation Chart for Employee Attendance History. In 2015, Metra granted Haymon's requests for around 31 weeks off work. DSOF ¶ 18; Employee

4

Attendance History; Abbreviation Chart for Employee Attendance History. For employees that seek more leave after exhausting their FMLA leave, they "must submit proper documentation and receive approval from Metra for a medical leave of absence." DSOF ¶ 16; R. 172-24, Chemasko Decl. ¶ 4.

On December 16, 17, 18, and 21, 2015, Haymon did not appear at her scheduled work assignment. DSOF ¶ 39; R. 172-7, Jan. 4, 2016, Notice of Discipline. On December 21, 2015, Metra issued Haymon a letter of discipline for these absences. DSOF ¶ 40; R. 172-4, Employee Personal Record at 3; Bates Dep. 129:05–130:09. On January 4, 2016, Haymon signed a "Waiver of Formal Investigation, wherein she waived a formal hearing for failing to comply with Metra's rules on absenteeism and admitted to the infraction." DSOF ¶ 41; R. 172-8, Waiver of Formal Investigation; R. 172-4, Employee Personal Record; Haymon Dep. 133:20–134:19. Haymon accepted a three-day suspension, as well as enforcement of a "one-day deferred suspension" from a prior infraction. *Id.*

On December 22, 2015, Metra "mistakenly approved" Haymon's request for a medical leave of absence from December 7, 2015, through January 8, 2016. DSOF ¶ 26; R. 172-26, Notice from Metra Medical Department at 1. Metra erred in granting the leave because Haymon had "exhausted her FMLA leave and did not have benefit time to cover this time off." DSOF ¶ 26; R. 172-26, Letter from Metra Human Resources; Haymon Dep. 123:14–124:03. The next day, Metra informed Haymon that her request for this stretch of leave of absence was denied "because she exhausted her FMLA leave." DSOF ¶ 26; Letter from Human Resources.

5

## II. Legal Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

## III. Analysis

The ADA prohibits employers from discriminating against employees on the basis of their disability, and from retaliating against employees who make an anti-

discrimination complaint. *See Dickerson v. Bd. Trs. of Cmty. Coll. Dist. No. 522,* 657 F.3d 595, 600–01 (7th Cir.2011); 42 U.S.C. §§ 12112(a), 12203(a).

To establish a prima facie ADA claim, a plaintiff must show that "(1) she is disabled within the meaning of the ADA, (2) she is qualified to perform the essential functions of her job with or without reasonable accommodation, and (3) she has suffered from an adverse employment decision because of her disability." *Spurling v. C&M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014). There are two general ways to prove discrimination. First, under the direct method, the plaintiff can meet her burden by presenting either direct or circumstantial evidence. *Buie v. Quad/Graphics, Inc.,* 366 F.3d 496, 503 (7th Cir.2004); *Bekker v. Humana Health Plan, Inc.,* 229 F.3d 662, 670 (7th Cir.2000). Direct evidence includes an admission by the decisionmaker that the employment decision was based on the prohibited animus. *Buie,* 366 F.3d at 503. More frequently, however, employees present circumstantial evidence to prove discrimination. *Id.* This may include evidence of "(1) suspicious timing[,] (2) ambiguous statements or behavior towards other employees in the protected group[,] (3) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically receive better treatment" or "(4) evidence that the employer offered a pretextual reason for an adverse employment action." *Dickerson,* 657 F.3d at 601.

Second, under the indirect method of proof, *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), discrimination may be proven through a burden-shifting framework. The plaintiff first must establish a *prima facie* case of discrimination. *Lloyd v.*

*Swifty Transp., Inc.,* 552 F.3d 594, 601 (7th Cir.2009). This requires the plaintiff to show that: "(1) he is disabled under the ADA; (2) he was meeting his employer's legitimate employment expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees without a disability were treated more favorably." *Dickerson,* 657 F.3d at 601. Once the employee has established a *prima facie* case, the burden shifts to the employer to "identify a legitimate, non-discriminatory reason for its employment decision." *Id.* Finally, if the employer meets this burden, the employee must prove by a preponderance of the evidence that the employer's reasons are mere pretext for discrimination. *Id.*

### A. Qualified Individual

On the threshold requirement for a disability-discrimination claim, Haymon has not even established that she is a qualified individual. The Seventh Circuit has previously explained that an "employee who needs long-term medical leave cannot work and thus is not a qualified individual under the ADA." *Severson v. Heartland Woodcraft, Inc.*, 872 F.3d 476, 479 (7th Cir. 2017) (cleaned up).[5] Here, Haymon had not only exhausted her FMLA entitlement, but was on leave well beyond what is permitted through the FMLA policy. Metra's policy permits employees to take up to 12 weeks of unpaid leave consistent with the Family and Medical Leave Act. DSOF ¶ 14. Haymon was out of work for nearly 31 weeks in 2015. DSOF ¶¶ 19–22. Even for

---

[5]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

individuals with disabilities, "a medical leave spanning multiple months does not permit the employee to perform the essential functions of his job." Severson, 872 F.3d at 481. In fact, the "inability to work for a multi-month period removes a person from the class protected by the ADA." *Id.*

Although the Court is not casting doubt on Haymon's need for the leave, the ADA does not require the employer to excuse her absence from work well beyond what she was entitled to under the FMLA. Haymon is not a qualified individual within the meaning of the ADA.

### B. Three-Day Suspension

Even if Haymon were a qualified individual, Haymon's assertion that she was discriminated against her when Metra issued her a three-day work suspension, Amended Compl. at 10, would fall short, because Metra has provided a non-discriminatory basis for the suspension. Indeed, the basis for her suspension is intertwined with why she cannot be considered a qualified individual within the meaning of the ADA.

Metra argues that Haymon was subject to a three-day work suspension because "she failed to show up for work and not because of a disability." Def.'s Br. at 9. Remember that Metra mistakenly approved Haymon's request for leave on December 22, 2015, but when the company realized that it had made a mistake, the very next day Metra informed Haymon that her request for leave was denied. DSOF ¶ 26. Absent any further presentation of facts on this issue, Haymon's argument that she was

9

suspended because of disability discrimination, has no support. Haymon's suspension was due to her unapproved absence from work.

## C. Retaliation

Finally, Haymon's claim that she was removed from her Engineering Clerk Position in retaliation for engaging in protected activity is not supported by the facts presented, even when viewed in Haymon's favor. To prevail on a claim for retaliation, the employee must show that (1) she engaged in protected activity, (2) she suffered an adverse action, and (3) there is a causal connection between the protected activity and adverse action. *Rodrigo v. Carle Foundation Hospital*, 879 F.3d 236, 243 (7th Cir. 2018).

Here, even when the evidence is viewed in Haymon's favor, no jury could find that the causal connection requirement is satisfied. There are two reasons for this failure of proof. First, there is no evidence that John Meyer, the supervisor who decided to disqualify Haymon, was even aware of Haymon's protected activity, because the protected activity came *after* Haymon took the job-competency test. DSOF ¶¶ 51–52. Second, Haymon failed the test she was required to pass in order to prove that she could perform the obligations of the General Engineering Clerk. DSOF ¶¶ 51–52. Metra provided a legitimate reason for disqualifying Haymon from this role, and there is no genuine dispute of material fact. The retaliation claim must be dismissed too.

## IV. Conclusion

For the reasons explained in this Order, Metra's motion for summary judgment is granted on all of Haymon's remaining claims. The status hearing of April 7, 2023, is vacated. Final judgment will be entered.

ENTERED:

      s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 30, 2023